UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MICHAEL L. POTTS, D.D.S., and THE AMERICAN ACADEMY OF IMPLANT DENTISTRY, | ) ) ) | Case No.S:03-CV-00348 JAM-DAD |
| | ) | **PRETRIAL CONFERENCE ORDER** |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| BRIAN STIGER, in his Official Capacity as Director, California Department of Consumer Affairs, et al., | ) ) ) ) | |
| Defendants. | ) ) ) | |

Pursuant to court order, a Pretrial Conference was held on September 9, 2010 before Judge John Mendez.  Frank R. Recker, Kenneth C. Mennemeier and Sarah Fischer appeared as counsel for plaintiffs; Jeffrey M. Phillips appeared as counsel for defendants. After hearing, the court makes the following findings and orders:

## I. <u>JURISDICTION/VENUE</u>

Jurisdiction is predicated upon 28 U.S.C. §§ 1331 and 1343, and has previously been found to be proper by order of this court, as has venue.  Those orders are confirmed.

## II. JURY/NON-JURY

Both parties have requested a court trial.  The Court grants this request.

## III. UNDISPUTED FACTS

1.   Plaintiff Michael L. Potts, D.D.S. ("Potts") has been a California-licensed dentist in good standing since 1975 practicing general dentistry.

2.   Potts performs the following dental work on patients: endodontics, cosmetic dentistry, crowns, bridges, implants, oral surgery, periodontal surgery, and full mouth restorations.

3.   Potts is a credentialed member of Plaintiff American Academy of Implant Dentistry ("AAID").

4.   Potts holds the credentials of "Fellow" awarded by the AAID, and is a board certified "Diplomate" awarded by the American Board of Oral Implantology/Implant Dentistry ("ABOI/ID").

5.   Potts became an "Associate Fellow" of AAID in approximately 1979-80.

6.   In 1985, Potts earned his "Fellow" credential from AAID.

7.   Potts is a past President of the Western District of the AAID.

8.   Potts is a member of the American Dental Association, the California Dental Association and the Ventura County Dental Society.

9.   Potts was awarded a Certificate of Recognition and the Medical Professional Award for 2003 by the California State Assembly.

10.  Potts holds a "Fellow" credential from the International Congress of Oral Implantology  (I.C.O.I.).

11. Under California Business and Professions Code Section 651(h)(5)(A), Potts is not permitted to advertise his AAID and/or ABOI/ID credentials to the public.

12. Potts has advertised his AAID and ABOI/ID credentials consistent with the Court's decision in *Bingham v. Hamilton*, 100 F.Supp. 2d 1233 (E.D. Cal. 2000) ("*Bingham II*"), and seeks to continue to do so.

13. AAID is a national dental organization established in 1951 and is the oldest dental implant organization in the United States.

14. AAID Headquarters Office is located in the American Dental Association ("ADA") Building located at 211 E. Chicago Avenue in Chicago, Illinois.

15. J. Vincent Shuck ("Shuck") is the former Executive Director of AAID; the current Executive Director is Sharon Bennett ("Bennett").

16. Shuck served as Executive Director of AAID from 1992 to 2008, prior to which time he was employed by the ADA for 19 years.

17. In their capacity as Executive Director, Shuck and now Bennett are responsible for overseeing the implementation of all policies adopted by the Board of Trustees of AAID and are further responsible for maintaining accurate records of all AAID business, including the granting of credentials in implant dentistry.

18. AAID also sponsors and supports the ABOI/ID, its national certifying Board.

19. ABOI/ID was created in 1989 by AAID and provides sponsorship, staff space, and file space to ABOI/ID.

20.   In 1993, the Council on Dental Education recognized AAID as the sponsoring organization for the non-specialty area of implant dentistry.   The ADA has not granted this recognition to any other dental implant organization.

21.   Implant dentistry consists of the placing of devices for attaching artificial replacement teeth to the same bones to which natural teeth are anchored.

22.   Implants may be inserted into the bone, functioning like an artificial tooth root, or may be placed directly against the bone to support a dental prosthesis.

23.   In implant dentistry there are basically two components: the first is the surgical component—the anchoring of the implant or artificial root to the bone; and once the implant site has healed, the second step is the placement of the prosthodontic component, which is the artificial tooth structure.

24.   Implant dentistry is a dental procedure that may be performed in California by a general dentist or specialist.

25.   A primary purpose of AAID is enhancement of dental professionals' knowledge, skill and expertise in implant dentistry. Accordingly, AAID encourages its members' attainment of "credentialed" status from AAID (the credential of Associate Fellow and/or Fellow) and "Diplomate" status from ABOI/ID.

26.   AAID grants the credentials of "Fellow" and "Associate Fellow" to member dentists who have fulfilled certain educational, experiential and examination requirements.

27.   AAID awards "Fellow" credentials based on the educational requirement of completing at least 100 hours of continuing education in implant dentistry in addition to the 300 hours

1   required for Associate Fellow membership.  Each credential has its

2   own predicate requirements for qualification.

3       28.  ABOI/ID issues a Diplomate certificate (also referred to

4   as "Board Certification") in the area of implant dentistry, which

5   is not an ADA recognized specialty area of dental practice.

6       29.  AAID and ABOI/ID maintain the following websites:

7   www.aaid.com and www.aboi.org.  These websites list the

8   credentialing requirements.

9       30.  No dentist can obtain a credential from AAID or ABOI/ID

10  by simply paying a fee.

11      31.  The continuing education courses which apply toward AAID

12  and ABOI/ID credentials can be taken over an unlimited period of

13  time.

14      32.  Neither AAID nor ABOI/ID retain any information regarding

15  the continuing education courses listed on the credential

16  applications after one year.

17      33.  Currently, there are nine areas of dental practice

18  recognized by the ADA as specialty areas of practice:  Oral and

19  Maxillofacial Surgery, Orthodontics, Oral Pathology, Public Health

20  Dentistry, Oral and Maxillofacial Radiology, Pediatric Dentistry,

21  Periodontology, Prosthodontics, and Endodontics.

22      34.  These accredited specialty educational programs are

23  formal post-doctoral programs that are of at least two years in

24  length.  All of these specialty educational programs are full-time

25  programs.  These full-time programs may allow some students to

26  enroll on a part-time basis if certain requirements are met.

27      35.  There are multiple areas of dentistry that are not

28  recognized as specialty areas of dental practice by the ADA, and

there are multiple national dental organizations that issue
credentials in non-specialty areas of dentistry.  Examples include:
implant dentistry, cosmetic dentistry, forensic dentistry, general
dentistry, orofacial pain, oral medicine, and laser dentistry.

36.  The determination of whether an area of dental practice
is deemed a specialty area of dentistry is made by the ADA House of
Delegates, a governing political body largely comprised of
practicing U.S. dentists.

37.  CoDA, under the auspices of the ADA, is the entity that
sets the accreditation standards for dental schools, and advanced
specialty education programs for dentistry in the United States.

38.  CoDA's accreditation review process is based on national
standards that assess the quality of dental education programs that
include: outcome assessment, administration, curriculum, faculty,
financial support and physical facilities.

39.  CoDA meets in January and July of each year to review
accreditation reports and award accreditation statuses to programs.

40.  CoDA assigns review committees composed of experts in
their respective fields, chaired by a Commissioner, who perform
site visit reports, progress reports, and other reports to the
various discipline review committees, prior to action on
accreditation matters.

41.  "When all other avenues of due process have been
explored, any program has the right to appeal an adverse
accreditation decision (i.e., denial or withdrawal of
accreditation) to [CoDA's] Appeal Board."

42.  The ADA's Dental Specialty Recognition Process allows
applicant organizations the right to respond to the denial of

1  specialty recognition, the right to specially appear before CDEL

2  after denial of specialty recognition, and the right for the ADA

3  House of Delegates to review CDEL's denial recommendation.

4      43.  Several post-graduate programs in ADA-recognized

5  specialties allow some students to enroll on a part-time basis.

6      44.  Potts is not a Diplomate of any ADA-recognized specialty

7  board, and has not completed any CoDA-accredited or California

8  Dental Board-recognized advanced educational dental program.

9      45.  Potts is not a "specialist" in implant dentistry.

10      46.  Plaintiffs do not seek to advertise that they are

11  "specialists" in implant dentistry or that their board

12  certification is an ADA-recognized "specialty" area.

13      47.  The California Dental Board issues only one dental

14  license, and therefore all licensed California dentists possess the

15  same "general" dental license.

16      48.  Dentists may earn credentials from bona fide (as defined

17  under Section 651(h)(5)(A)) National Dental Organizations in areas

18  of dental practice that are not one of the nine ADA recognized

19  "specialty" areas of dental practice.

20      49.  A California dentist must complete 50 hours of continuing

21  education in any area of dental practice every two years in order

22  to maintain and renew his or her license.

23      50.  These 50 hours can include courses in any area of dental

24  practice, both clinical and/or non-clinical, for example, infection

25  control, dental anesthesia and California law.

26      51.  Potts used some of his CE courses for both his ABOI/ID

27  credential and his AAID credential.

28

52. All continuing education courses used to meet the educational hours for Dr. Potts AAID credential were also submitted to the Dental Board to satisfy continuing education hours to maintain Dr. Potts' dental license.

53. One of the patient rights set forth by the CDA is: "You have a right to know the education and training of your dentist and the dental team."

54. On January 29, 2002, the Assembly passed AB 1026 on to the California Senate.

55. After amendments to AB 1026 were made in the various committees, AB 1026 was heard by the Senate Committee on Business and Professions on April 8, 2002.

56. AB 1026 passed the Senate on August 14, 2002 and was returned to the Assembly.  On August 19, 2002, the Assembly concurred in the Senate amendments.

57. As reflected in the Legislative Counsel's Digest preceding the amendment at issue:  "This bill would also prohibit a dentist from representing to the public or advertising accreditation ... by a board not meeting the above requirements unless the dentist has attained membership in or been credentialed by an accrediting organization recognized by the board as a bona fide organization . ... The bill would set forth membership or credentialing requirements that an organization must have in order to be recognized a bona fide organization."

58. On September 3, 2002, AB1026 was enacted as new California Business and Professions Code Section 651(h)(5)(A).

59. Under current California law, Potts is not permitted to advertise his AAID and/or ABOI/ID credentials to the public because

these credentials were not issued by a "bona fide" credentialing organization, as that term is defined by Section 651(h)(5)(A).

60.  Neither AAID nor ABOI/ID comply with the provisions of Section 651 (h)(5)(A)(ii), since their credentials may be issued without the requirement that the applicant complete "a formal, full-time advanced education program that is affiliated with or sponsored by a university based dental school and is beyond the dental degree at a graduate or postgraduate level."

61.  The California Dental Board may enforce the Code provisions that apply to dentists, as well as to enforce the Dental Practice Act and to investigate dentists relating to the implementation and enforcement of the provisions of Section 651 of the Code.

62.  On February 25, 2003, Potts and AAID commenced this lawsuit challenging Section 651(h)(5)(A).

**The parties are ordered to meet and confer regarding additional undisputed facts proposed in the joint pretrial statement.  The parties shall submit any additional undisputed facts to the Court on or before September 20, 2010.**

IV. <u>DISPUTED FACTUAL ISSUES</u>

**The parties are ordered to meet and confer regarding the proposed disputed facts set forth in the joint pretrial statement and submit a revised joint set of disputed factual issues on or before September 20, 2010.**

V. <u>DISPUTED EVIDENTIARY ISSUES</u>

**<u>Plaintiffs</u>**

Plaintiffs anticipate objecting to any evidence, including witnesses and expert disclosures, not timely submitted in

1   accordance with the applicable discovery deadlines.  Plaintiffs

2   anticipate addressing these disputes in motions in limine and/or as

3   the need may arise at trial.

4       **Defendants Contend:**

5       1.   The facts before the court in the prior actions (*Bingham*

6   *v. Hamilton*, 100 F. Supp. 2d 1233 (E.D. Cal. 2000) and *Potts v.*

7   *Hamilton*, 334 F. Supp. 2d 1206 (E.D. Cal. 2004)) and the findings

8   of these courts are irrelevant and inadmissible. The facts and

9   issues before the Court in these prior cases are different from the

10  facts and issues before this Court.  The Ninth Circuit addressed

11  this very same argument, and held that the *Bingham II* case has no

12  binding effect on the present litigation, and specifically stated:

13  "We agree with the district Court that this argument lacks merit.

14  Because the California legislature significantly amended section

15  651(h)(5)(A) in 2002, subsequent to the judgment in Bingham,

16  neither the claim nor the issues in the instant litigation are

17  substantially identical to those before the Court in the prior

18  case." (Potts v. Zettel, 220 Fed. Appx. 559, 2007 WL 412232 (9th

19  Cir. (Cal. 2007) (rejecting plaintiff's claims of issue preclusion,

20  claim preclusion, and res judicata.)

21      2.   It is irrelevant whether the survey and other evidence

22  was not before the California Legislature when it amended section

23  651(h)(5)(A). The Ninth Circuit held that "The survey results were

24  probative of their potential to mislead and were therefore

25  relevant, regardless of whether the legislature had the benefit of

26  the surveys when it amended § 651(h)(5)(A)." *Potts v. Zettel* 220

27  Fed.Appx. 559, 561, 2007 WL 412232 (9th Cir. 2007).   This issue has

28  been decided by the Ninth Circuit.

3.    The number of AAID members, Fellows, and ABOI/ID Diplomates, which show a relatively small number of credentialed members as compared to the number of regular members, is not probative and thus not relevant to the issue that these credentials are rigorous.

4.    The availability of, or difficulty in attending a full-time post-graduate dental education program in Implant Dentistry is irrelevant to First Amendment Analysis.  The fact that full-time programs in implant dentistry at a university-based dental school may be far away, only available in large metropolitan areas, require full-time attendance, or are otherwise "inconvenient" or "impossible" for dentists who are currently practicing, is not a relevant factor that this Court can consider in its First Amendment analysis under *Central Hudson v. Public Serv. Comm'n of  N.Y.*, 447 U.S. 557 (1980).

## VI. <u>RELIEF SOUGHT</u>

Plaintiffs seek the following relief: (1) a declaration that Section 651(h)(5)(A) is unconstitutional on its face; (2)  a declaration that Section 651(h)(5)(A) is unconstitutional as applied to Plaintiffs; (3) a permanent injunction prohibiting defendants from implementing the provisions of Section 651(h)(5)(A); and (4) all attorneys' fees and costs incurred in bringing this action.

## VII. <u>POINTS OF LAW</u>

Trial briefs shall be E-filed with the court no later than seven (7) days prior to the date of trial, i.e., October 6, 2010. Any points of law not previously argued to the Court should be briefed in the trial briefs.

VIII.  <u>ABANDONED ISSUES</u>

Plaintiffs have not abandoned any claims for relief.

IX.  <u>WITNESSES</u>

Plaintiff anticipates calling the following witnesses:

(a)  Michael L. Potts, D.D.S.:  Plaintiff

(b)  J. Vincent Schuck:  AAID's Executive Director at time of filing Complaint

(c)  Dr. Jaime Lozada:  Plaintiffs' Expert Witness

(d)  J. Scott Armstrong:  Plaintiffs' Rebuttal Expert Witness

(e)  Lynn Stokes:  Plaintiffs' Rebuttal Expert Witness

(f)  Richard Scheffler:  Plaintiff's Expert Witness

Defendant anticipates calling the following witnesses:

(a)  Michael A. Kamins:  Defendants' Expert Witness

(b)  Dr. Sandra R. Cogan:  Defendants' Expert Witness

(c)  Dr. Laura Neumann:  Defendants' Expert Witness

(d)  Elizabeth Snow, former Director of Legislative Affairs, California Dental Association.

(e)  Charles J. Goodacre, D.D.S., M.S.D., Dean of Loma Linda University School of Dentistry.

Each party may call a witness designated by the other.

A.  No other witnesses will be permitted to testify unless:

(1)  The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence which could not be reasonably anticipated at the Pretrial Conference, or

(2)  The witness was discovered after the Pretrial Conference and the proffering party makes the showing required in "B" below.

B.  Upon the post-Pretrial discovery of witnesses, the

1  attorney shall promptly inform the court and opposing parties of
2  the existence of the unlisted witnesses so that the court may
3  consider at trial whether the witnesses shall be permitted to
4  testify.  The evidence will not be permitted unless:

5        (1)  The witnesses could not reasonably have been
6  discovered prior to Pretrial;

7        (2)  The court and opposing counsel were promptly
8  notified upon discovery of the witnesses;

9        (3)  If time permitted, counsel proffered the witnesses
10  for deposition;

11        (4)  If time did not permit, a reasonable summary of the
12  witnesses' testimony was provided opposing counsel.

13              X. <u>EXHIBITS, SCHEDULES AND SUMMARIES</u>

14     A.   Each party will submit a list of documents of which it
15  wants the Court to take judicial notice.  The lists will be
16  attached as an exhibit to the parties' trial briefs.

17     B.   Plaintiff intends to introduce the following exhibits:

18        1.   Requirements of the AAID and ABOI/ID for Associate
19  Fellow Credential, Fellow Credential, and Diplomate at the time the
20  Complaint was filed (Exhibit B to Complaint).

21        2.   Current requirements for Associate Fellow
22  credential, obtained from AAID's website.

23        3.   Current requirements Fellow credential, obtained
24  from AAID's website.

25        4.   Current requirements for Diplomate or Board
26  Certified credential, obtained from ABOI/ID's website.

27        5.   Background information on AB 1026, dated December
28  12, 2001, submitted by legislative staff member Sarah B. Angel

1 (Exhibit D to Complaint).

2          6.   Undated document entitled "Legislative Proposal-

3 Advertising of Credentials" (Exhibit E to Complaint).

4          7.   January 8, 2002 letter from Elizabeth M. Snow to

5 Assemblymember Thomson (Exhibit F to Complaint).

6          8.   Assembly Committee on Health Analysis of AB 1026

7 (Exhibit G to Complaint).

8          9.   Assembly Committee on Appropriations Analysis of AB

9 1026 (Exhibit H to Complaint).

10          10.  Senate Committee on Business and Professions

11 Analysis of AB 1026 (Exhibit I).

12          11.  West's 2002 California Legislative Service for AB

13 1026 (Exhibit J to Complaint).

14          12.  Legislative History of AB 1026, as submitted as an

15 attachment to the Declaration of Alice Olson in Support of

16 Plaintiffs' Motion for Summary Judgment (Docket no. 62).

17     C.   Defendants have not identified any exhibits which the

18 Court finds to be admissible.

19     Each party may use an exhibit designated by the other.

20     A.   No other exhibits will be permitted to be introduced

21 unless:

22          (1)  The party proffering the exhibit demonstrates that

23 the exhibit is for the purpose of rebutting evidence which could

24 not be reasonably anticipated at the Pretrial Conference, or

25          (2)  The exhibit was discovered after the Pretrial

26 Conference and the proffering party makes the showing required in

27 paragraph "B," below.

28     B.   Upon the post-Pretrial discovery of exhibits, the

1   attorneys shall promptly inform the court and opposing counsel of
2   the existence of such exhibits so that the court may consider at
3   trial their admissibility.  The exhibits will not be received
4   unless the proffering party demonstrates:

5          (1)  The exhibits could not reasonably have been
6   discovered prior to Pretrial;

7          (2)  The court and counsel were promptly informed of
8   their existence;

9          (3)  Counsel forwarded a copy of the exhibit(s) (if
10  physically possible) to opposing counsel.  If the exhibit(s) may
11  not be copied, the proffering counsel must show that he has made
12  the exhibit(s) reasonably available for inspection by opposing
13  counsel.

14      As to each exhibit, each party is ordered to exchange copies
15  of the exhibit not later than fourteen (14) days before trial.
16  Each party is then granted five (5) days to file and serve
17  objections to any of the exhibits.  In making the objection, the
18  party is to set forth the grounds for the objection.  The parties
19  shall pre-mark their respective exhibits in accord with the Court's
20  Pretrial Order.  Exhibit stickers may be obtained through the
21  Clerk's Office.  An original and one (1) copy of the exhibits shall
22  be presented to Harry Vine, Deputy Courtroom Clerk, at 8:30 a.m. on
23  the date set for trial or at such earlier time as may be agreed
24  upon.  Mr. Vine can be contacted at (916) 930-4091 or via e-mail
25  at: hvine@caed.uscourts.gov.  As to each exhibit which is not
26  objected to, it shall be marked and may be received into evidence
27  on motion and will require no further foundation.  Each exhibit
28  which is objected to will be marked for identification only.

XI.  DISCOVERY DOCUMENTS

A.   Plaintiffs expect to offer the following discovery documents:

(1)  Defendants' Response to Plaintiffs' First Set of Interrogatories to Defendants, dated October 23, 2003.

(2)  Defendants' Response to Plaintiffs' First Request for Admissions, dated October 24, 2003.

(3)  Excerpts from deposition of Dr. Laura Neumann and cited exhibits.

(4)  Excerpts from deposition of Dr. Alan H. Kaye and cited exhibits.

(5)  Excerpts from deposition of Michael L. Potts and cited exhibits.

(6)  Excerpts from deposition of Jaime L. Lozada and cited exhibits.

(7)  Excerpts from deposition of J. Vincent Shuck and cited exhibits.

(8)  Excerpts from deposition of J. Scott Armstrong.

(9)  Excerpts from deposition of Michael A. Kamins.

(10) Excerpts from deposition of Sandra R. Cogan.

B.   Defendants expect to offer the following discovery documents:

(1)  Plaintiff Potts' responses to Defendant Gatlin's First Set of Interrogatories.

(2)  Plaintiff AAID's responses to Defendant Gatlin's First Set of Interrogatories.

(3)  Plaintiff AAID's responses to Defendant Hamilton's First Set of Interrogatories.

1    (4)  Plaintiff AAID's Response to Defendant Gatlin's First Set
2  of Request for Production of Documents.

3    (5)  Plaintiff AAID's Supplemental Responses to Defendant
4  Gatlin's First Set of Request for Production of Documents.

5    (6)  Plaintiff Pott's Supplemental Responses to Defendant
6  Gatlin's First Set of Request for Production of Documents.

7    (7)  Deposition transcript of Plaintiffs' expert Richard
8  Scheffler, Ph.D with attached exhibits.

9    (8)  Deposition transcript of Person Most Knowledgeable from
10  Plaintiff AAID and ABOI/ID (J. Vincent Schuck) with attached
11  exhibits.

12    (9)  Deposition transcript of Plaintiff's expert S. Lynn
13  Stokes, Ph. D and attached exhibits.

14                 XII. <u>FURTHER DISCOVERY OR MOTIONS</u>

15    Pursuant to the court's Status Conference Order, all discovery
16  and law and motion was to have been conducted so as to be completed
17  as of the date of the Pretrial Conference.  That order is
18  confirmed.  The parties are free to do anything they desire
19  pursuant to informal agreement.  However, any such agreement will
20  not be enforceable in this court.

21                      XIII. <u>STIPULATIONS</u>

22    On June 9, 2010, the parties entered into a stipulation
23  regarding evidence admissible in the cross-motions for summary
24  judgment/adjudication (Docket no. 191).  This stipulation is not
25  applicable to the trial of this case.

26                 XIV. <u>AMENDMENTS/DISMISSALS</u>

27    There are no amendments to the pleadings, no dismissals, nor
28  any additions or substitutions of parties.  Individual defendants

1   have been added and/or dropped from the lawsuit based on their

2   status as current members or staff of the Dental Board of

3   California.

4   XV. <u>FURTHER TRIAL PREPARATION</u>

5       A.   Counsel are directed to Local Rule 285 regarding the

6   contents of trial briefs.  Such briefs should be E-filed seven (7)

7   days prior to trial, i.e., October 6, 2010.

8       B.   It is the duty of counsel to ensure that any deposition

9   which is to be used at trial has been lodged with the Clerk of the

10  Court pursuant to Local Rule 133(4)(j).  The depositions shall be

11  lodged with the court clerk seven (7) calendar days prior to the

12  date of the trial.  Counsel are cautioned that a failure to

13  discharge this duty may result in the court precluding use of the

14  deposition or imposition of such other sanctions as the court deems

15  appropriate.

16      C.   The parties are ordered to E-file with the court and

17  exchange between themselves not later than one (1) week before the

18  trial a statement designating portions of depositions intended to

19  be offered or read into evidence (except for portions to be used

20  only for impeachment or rebuttal).

21      D.   The parties are ordered to E-file with the court and

22  exchange between themselves not later than one (1) week before

23  trial the portions of Answers to Interrogatories which the

24  respective parties intend to offer or read into evidence at the

25  trial (except portions to be used only for impeachment or

26  rebuttal).

27

28

E.   In limine motions shall be E-filed separately at least ten (10) days prior to trial, i.e., October 4, 2010.  Opposition briefs shall be E-filed five (5) days prior to trial, i.e., October 8, 2010.  No reply briefs may be filed.

## XVI. SETTLEMENT NEGOTIATIONS

No formal settlement negotiations will be set by the Court.

## XVII. AGREED STATEMENTS

See paragraph III, *supra*.

## XVIII. SEPARATE TRIAL OF ISSUES

A separate trial of issues in this matter is neither feasible, nor advised.

## XIX. IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

The Court need not appoint impartial expert witnesses, nor limit the number of experts.

## XX. ATTORNEYS' FEES

The matter of the award of attorneys' fees to prevailing parties pursuant to statute will be handled by motion in accordance with Local Rule 293.

## XXI. MISCELLANEOUS

None.

## XXII. ESTIMATE OF TRIAL TIME/TRIAL DATE

The parties estimate three (3) to four (4) court days for trial.  Trial will commence on October 13, 2010, at 9:00 a.m.

Counsel are to call Harry Vine, Courtroom Deputy, at (916) 930-4091, one week prior to trial to ascertain the status of the trial date.

1                  XXIII. <u>OBJECTIONS TO PRETRIAL ORDER</u>

2      Each party is granted seven (7) days from the date of this

3 Pretrial Order to object to it via ECF.

4      IT IS SO ORDERED.

5

6      DATED: September 13, 2010.

7                                JOHN A. MENDEZ,
                               UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28